**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Case No. 06-cv-02272-REB-MJW

P. CHRISTOPHER SWANSON,
GERALDINE SCHMIDT, and
JOANNE ROE, individually and on behalf of all persons similarly situated,

      Plaintiffs,

v.

THE TOWN OF MOUNTAIN VIEW, COLORADO,
POLICE CHIEF ERIC GOMEZ, in his individual and official capacity,
POLICE OFFICER DAVID GROFF, in his individual and official capacity,
POLICE OFFICER HERNANDEZ, in his individual and official capacity, and
POLICE OFFICER PEREZ, in his individual and official capacity,

      Defendants.

---

## ORDER CONCERNING MOTION FOR SUMMARY JUDGMENT

---

**Blackburn, J.**

      This matter is before me on the following: 1) the **Defendants' Motion To Dismiss First Amended Complaint** [#25], filed March 2, 2007; and 2) the **Defendants' Combined Motion and Brief in Support of Summary Judgment** [#63], filed October 1, 2007. The plaintiffs filed a response [#66] to the motion for summary judgment, and the defendants filed a reply [#67]. I grant the motion for summary judgment in part and deny it in part. The motion to dismiss raises the same issues raised in the motion for summary judgment; thus, I deny the motion to dismiss as moot.

## I. JURISDICTION

      I have jurisdiction over this case under 28 U.S.C. § 1331 (federal question).

## II.  STANDARD OF REVIEW

The purpose of a summary judgment motion is to assess whether trial is necessary.  ***White v. York Int'l Corp.***, 45 F.3d 357, 360 (10ᵗʰ Cir. 1995).  FED. R. CIV. P. 56 (c) provides that the court may grant summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P.  56(c); ***see Anderson v. Liberty Lobby, Inc.***, 477 U.S. 242, 250 (1986); ***Concrete Works, Inc. v. City & County of Denver***, 36 F.3d 1513, 1517 (10th Cir.1994). Summary judgment may be granted if the court concludes that no "rational trier of fact" could find for the nonmoving party based on the showing made in the motion and response. ***Matsushita Electric Industrial Co. v. Zenith Radio Corp.***, 475 U.S. 574, 587 (1986).

## III.  FACTS

The facts relevant to my resolution of the issues presented in the motion for summary judgment generally are undisputed.  The Town of Mountain View, Colorado (the Town) is a small municipality in the Denver metro area.  For many years, the Town's police department issued traffic citations on westbound 44ᵗʰ Avenue and northbound Sheridan Boulevard.  The portions of westbound 44ᵗʰ Avenue and northbound Sheridan Boulevard that are in question here are not within the boundaries of the Town of Mountain View.  Many of the citations issued by the Town's police officers at these locations outside of the Town's limits were prosecuted in the municipal court for the Town of Mountain View.  Some of the citations were prosecuted in the

courts of Jefferson County, Colorado.

Defendant Eric Gomez became the Chief of Police of the Town's police department in August, 2002. When he was hired as chief, Gomez spoke to the previous Chief of Police. The previous chief told Gomez that the issue of jurisdiction on the portions of roadway described above had been examined, and a determination had been made that the Town's police officers could issue traffic citations on state highways and prosecute those citations in the town's municipal court. Both Sheridan Boulevard and 44th Avenue are state highways.

In 2006, former plaintiff, Shiloh Frazier, challenged criminal charges that had been filed against him on the grounds that the traffic stop from which the charges originated had been made outside the jurisdiction of the Town's police department. The charges eventually were dismissed for lack of jurisdiction. Shortly after the Frazier case was dismissed, Gomez, the Chief of Police, issued a memorandum instructing his officers to stop issuing traffic citations on northbound Sheridan Boulevard.

Plaintiff, Christopher Swanson, was issued a citation by the Town's police department on February 17, 2006. Swanson was cited for making a prohibited right turn on a red light from westbound 44th avenue onto northbound Sheridan Boulevard. Swanson admits that he made the prohibited right turn, but claims that the turn did not occur within the Town's limits. After Swanson and Gomez spoke about the issue of jurisdiction concerning Swanson's citation, Gomez requested that the Town Attorney dismiss Swanson's citation.

Plaintiff, Geraldine Schmidt, was issued a citation by the Town's police department on February 23, 2006. Schmidt was cited for making a prohibited right turn

on a red light from westbound 41st avenue onto northbound Sheridan Boulevard.
Schmidt admits that she made the prohibited right turn. However, Schmidt says she
never was within the limits of the Town when she made this turn. Schmidt pled guilty
and paid a fine of 115 dollars. Nothing in the record indicates that Schmidt's plea has
been vacated.

Plaintiff, Joanne Roe, was issued a citation by the Town's police department on
September 16, 2005. Roe was cited for making a left turn on a red light from
westbound 44th Avenue onto southbound Sheridan Boulevard. Roe pled guilty and paid
a fine of 95 dollars. Nothing in the record indicates that Roe's plea has been vacated.

The Town notes that Roe has conceded that the violation with which she was
charged occurred within the Town's boundaries. In her deposition, Roe testified that it
is her understanding that the Town's boundary line runs down the middle of Sheridan
Boulevard, which runs north and south. *Motion for summary judgment*, Exhibit D (Roe
Depo.), p 43. Asked if she was in the Town of Mountain View when she made a left-
hand turn from westbound 44th Avenue onto southbound Sheridan Boulevard, Roe
replied, "Yes." *Id*.

Based on the Town's issuance of traffic tickets for alleged violations committed
outside of the Town's borders, the plaintiffs assert three claims for relief. In their First
Claim for Relief, the plaintiffs assert a claim under 42 U.S.C. §1983 for violation of their
rights under the Fourth Amendment. They allege that the defendants "unlawfully
seized Plaintiffs by means of physical force and/or their show of authority and thereby
restrained them of their freedom." *First Amended Complaint and Jury Demand* [#24],
filed February 20, 2007 (Amended Complaint), ¶ 62. The defendants' traffic stops are

alleged to have been unlawful because the alleged traffic offenses on which the traffic stops were based occurred outside of the Town's boundaries, and, therefore, outside of the jurisdiction of the Town's police officers. The plaintiffs allege further that the defendants' "issuance of traffic and other citations was a fruit of the unlawful seizure of Plaintiffs." *Id.* In their Second Claim for Relief, the plaintiffs assert a claim under the Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. § 1961 - 1968. In their Third Claim for Relief, the plaintiffs assert a supervisory liability claim against Gomez, and a municipal liability claim against the Town of Mountain View under 42 U.S.C. § 1983. In essence, the plaintiffs allege that Gomez, as Chief of Police, and the Town knew or should have known the jurisdictional boundaries of the town, and that Gomez and the Town "maintained policies, procedures, customs, and/or practices that explicitly authorized unlawful seizures by the Town's police officers, and the unlawful collection of fines, fees, and costs. *Amended Complaint.*, p. 16.

The defendants argue that they are entitled to summary judgment because plaintiffs Schmidt and Roe's claims are barred by the doctrine established in **Heck v. Humphrey**, 512 U.S. 477, 486 – 487 (1944), and by the **Rooker-Feldman** doctrine. **Rooker v. Fidelity Trust Co.**, 263 U.C. 413 (1923); **District of Columbia Court of Appeals v. Feldman**, 460 U.S. 462 (1983). In addition, the defendants argue that the evidence in the record does not support certain key elements of the plaintiffs' RICO claim. Gomez argues that the evidence in the record does not establish that he is subject to supervisory liability under § 1983, and the Town argues that the evidence in the record does not show that the town is subject to municipal liability under § 1983. Finally, the individual defendants argue that they are shielded from each of the

plaintiffs' claims by qualified immunity.

## IV.  PLAINTIFF JOANNE ROE

As discussed in greater detail below, the plaintiffs claim that the traffic stops conducted by the defendants against the plaintiffs violated the plaintiffs' rights because those stops were based on traffic offenses that allegedly occurred outside of the Town's limits.  Plaintiff, Joanne Roe, testified in her deposition that the Town's boundary runs down the middle of Sheridan Boulevard and that she entered the Town as she turned from westbound 44th Avenue onto southbound Sheridan Boulevard. *Motion for summary judgment*, Exhibit D (Roe Depo.), p 43.  The citation issued to Roe alleged that she made this turn against a red light.  Roe disputes that she made the turn against a red light.

The plaintiffs have not cited any evidence that would support the conclusion that Roe did not enter the Town's limits as she turned left from westbound 44th Avenue onto southbound Sheridan Boulevard.  Viewing the evidence in the record in the light most favorable to Roe, I must conclude that Roe entered the Town's limits as she made her turn.  If Roe entered the Town as she completed this left turn, then no reasonable fact finder could conclude that one of the defendants conducted a traffic stop targeting Roe despite the fact that Roe had not committed an alleged violation within the Town's limits. Based on these undisputed facts, the defendants are entitled to summary judgment on each of Roe's claims.

## V.  HECK V. HUMPHREY

In **Heck v. Humphrey**, 512 U.S. 477 (1994), the United States Supreme Court held relevantly:

in order to recover damages for . . . harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

512 U.S. at 486 - 87. "[W]hen a state prisoner seeks damages in a § 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated." *Id*. at 487. "A plaintiff may not bring a civil rights suit if a favorable result in the suit would necessarily demonstrate the invalidity of an outstanding criminal judgment against the plaintiff." *Smith v. Gonzales*, 222 F.3d 1220, 1222 (citing *Heck*, 512 U.S. at 487).

The plaintiffs argue that the judgments entered against them based on their traffic citations are not criminal judgments and that, thus, they are not subject to the bar defined in *Heck*. As the plaintiffs note, traffic infractions for disobeying a traffic signal are civil matters, and are not criminal offenses, under the Colorado Revised Statutes. §42-4-1701(1), C.R.S. The Town notes that Schmidt pled guilty to a violation of the Town's traffic code, and not to a violation of the Colorado Revised Statutes. This fact, however, does not demonstrate that the judgment entered against Schmidt is a criminal judgment rather than civil judgment. The Town has submitted no evidence that demonstrates that the judgment entered against Schmidt is anything other than a fine for a civil traffic infraction. Viewing the evidence in the record in the light most favorable to the plaintiffs, as I must, the evidence shows there is a genuine issue of material fact concerning the nature of the judgment entered against Schmidt based on

her traffic offense. This judgment may well be a civil matter, but the record does not demonstrate whether this judgment is a civil matter or criminal matter.

The Town argues also that even if the judgment against Schmidt is a civil judgment, that does not mean that *Heck* does not apply. The Town notes that the plaintiffs have not come forward with any authority showing that *Heck* dos not apply to "convictions and sentences stemming from an underlying traffic offense." *Defendants' reply*, p. 4. Conversely, the Town, the party seeking the entry of summary judgment on this point, has not come forward with any authority showing that *Heck* is applicable to anything other than a criminal conviction or sentence.

*Heck* speaks of a claim for damages in a civil rights suit and such a claim's relationship to "a conviction or sentence." *Heck*, 512 U.S. at 486. The terms conviction and sentence are terms used in the realm of criminal law and not in the realm of civil law. By its own terms, the bar established in *Heck* applies only in the context of an underlying criminal case. Absent evidence that Schmidt's traffic offense was a criminal matter rather than a civil matter, I cannot conclude that the bar established in *Heck* is applicable to Schmidt's claims against the defendants in this case. No judgment was entered against plaintiff Swanson based on the citation that was issued to him and, therefore, there is no arguable basis on which the *Heck* bar can be applied to Swanson's claims against the defendants.

## VI. ROOKER-FELDMAN

The defendants argue that all of the plaintiffs' claims are barred by the *Rooker-Feldman* doctrine. The *Rooker-Feldman* doctrine is named for the two seminal U.S. Supreme Court cases that first described its contours. *District of Columbia Court of*

*Appeals v. Feldman*, 460 U.S. 462 (1983); *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923). The *Rooker-Feldman* doctrine has its roots in 28 U.S.C. § 1257(a), which provides that "[f]inal judgments or decrees rendered by the highest court of a State in which a decision could be had, may be reviewed by the Supreme Court by writ of certiorari." Implicit in this grant of jurisdiction is the denial of authority to lower federal courts to review state court judgments. *See Rooker*, 263 U.S. at 416.[1] Simply stated, *Rooker-Feldman* constrains "a party losing in state court . . . from seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

The doctrine applies both to claims that were actually decided by the state court and to claims that are "inextricably intertwined" with the state court judgment. *See Kenmen Engineering v. City of Union*, 314 F.3d 468, 473 (10th Cir. 2002), *overruled on otr. grounds*, *Lance V. Dennis*, 546 U.S. 459, 465 (2006). To determine whether a claim is inextricably intertwined with the state court judgment,

> in general we must ask whether the injury alleged by the
> federal plaintiff resulted from the state court judgment itself
> or is distinct from that judgment. Three related concepts –
> injury, causation, and redressability – inform this analysis.
> In other words, we approach the question by asking whether
> the state-court judgment *caused*, actually and proximately,
> the *injury* for which the federal-court plaintiff seeks *redress*.

*Id*. at 476 (footnote, internal quotation marks, and citations omitted; emphases in original). Recently, the Supreme Court noted that *Rooker-Feldman* "is a narrow

---

[1] This limitation on federal subject matter jurisdiction applies to all state court judgments, by whatever court issued, whether temporary or final. *Kenmen Engineering v. City of Union*, 314 F.3d 468, 473-75 (10th Cir. 2002)

doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" ***Lance v. Dennis***, 546 U.S. 459, 464 (U.S. 2006), ***quoting Exxon Mobil Corp. v. Saudi Basic Industries Corp***, 544 U.S. 280, 284 (2005).

In this case, the plaintiffs' Amended Complaint indicates that they are seeking relief based on two types of actions taken by the defendants. First, the plaintiffs claim they were injured by the defendants' unlawful seizure of the plaintiffs by means of the defendants' use of "physical force and/or their show of authority," which seizure restrained the plaintiffs' freedom. *Amended Complaint*, ¶ 62. I read these allegations to refer to the traffic stops conducted by the defendants, which targeted the plaintiffs. The plaintiffs do not specify the damages they seek to recover based on this portion of their claim, but they generally allege that they "suffered injuries in an amount to be proven at trial." *Id.*, ¶ 68. Second, the plaintiffs allege that the defendants' "issuance of traffic and other citations was a fruit of the unlawful seizure of Plaintiffs." *Id.*, ¶ 64. Schmidt seeks to recover "pecuniary loss as a result of being issued the ticket, including the $115 cost of the fine assessed pursuant to the ticket." *Id*, ¶ 35.

To the extent the plaintiffs seek relief based on their claim the defendants' alleged unlawful seizure of the plaintiffs by means of the defendants' use of "physical force and/or their show of authority," *Amended Complaint*, ¶ 62, I conclude that the plaintiffs' claims are narrowed but are not barred by the ***Rooker-Feldman*** doctrine. Again, the application of the ***Rooker-Feldman*** doctrine must be approached "by asking whether the state-court judgment *caused*, actually and proximately, the *injury* for which

the federal-court plaintiff seeks *redress*." ***Kenmen***, 314 F.3d at 476 (footnote, internal quotation marks, and citations omitted; emphases in original); ***see also Lance v. Dennis***, 546 U.S. at 464. (U.S. 2006). A claim that the plaintiffs were injured when the defendants caused the plaintiffs to be stopped on the street is not necessarily a claim for injuries caused by the judgments entered in the Town's court. When the plaintiffs were stopped by the defendants, no court proceeding had been initiated. The allegations in the complaint readily can be read to include alleged economic and non-economic injuries suffered by the plaintiffs as the result of an unlawful stop by the Town's police officers, but not related to or caused by proceedings in or the judgment of the Town's court. In other words, to the extent the plaintiffs assert claims for relief based on the defendants' alleged unlawful seizure, and the alleged injuries did not occur during the course of or as a result of the Town's court proceedings, the plaintiffs' claims based on the defendants' alleged unlawful seizure are not barred by the ***Rooker-Feldman*** doctrine.

However, to the extent the plaintiffs seek to recover the traffic fines they paid to the Town or other damages incurred in the course of or as a result of proceedings in the Town's court, I conclude that their claims are barred by the ***Rooker-Feldman*** doctrine. A claim for such damages amounts to a claim by "a party losing in state court . . . seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." For example, an award of damages to the plaintiffs based on the traffic fines paid by the plaintiffs to the Town would, in substance, undo the judgments entered against the plaintiffs in the Town's municipal

court. In the context of the claims asserted in the plaintiffs' Amended Complaint, such an award could only be based on "a losing party's claim that the state judgment itself violates the loser's federal rights." ***Johnson v. De Grandy***, 512 U.S. 997, 1005-06 (1994). This is precisely the type of claim that is barred by the ***Rooker-Feldman*** doctrine.

## VII. RICO

The plaintiffs allege also a claim under RICO against the four individual defendants. This claim is barred by the ***Rooker-Feldman*** doctrine.

Although the plaintiffs do not specify which of the four subsections of 18 U.S.C. § 1962 provides the basis for their RICO claims, it appears that they construe their claims as implicating § 1962(c), which provides, in relevant part:

> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity . . .

18 U.S.C. §§ 1962(c). To establish a RICO claim under section 1962(c), the plaintiffs must allege that the individual defendants participated in the conduct of an "enterprise" through a "pattern" of "racketeering activity." ***Garrett v. Selby Connor Maddux & Janer***, 425 F.3d 836, 838 (10th Cir. 2005.) A defendant engages in "racketeering activity" when he commits one or more RICO "predicate acts," that is, the various federal and state crimes specified in 18 U.S.C. § 1961(1). ***United States v. Smith***, 413 F.3d 1253, 1268-69 (10th Cir. 2005), ***cert. denied***, 126 S.Ct. 1093 (2006). To show a "pattern" of such activity, the plaintiffs must establish that the defendants committed at least two predicate offenses, which are both related to one another and

demonstrate a threat of continuing activity. ***H.J., Inc. v. Northwestern Bell Telephone Co.***, 492 U.S. 229, 236-37, 239, 109 S.Ct. 2893, 2899, 2900, 106 L.Ed.2d 195 (1989); ***Resolution Trust Corp. v. Stone***, 998 F.2d 1534, 1543 (10th Cir. 1993).

In their Amended Complaint, the plaintiffs allege two types of predicate acts in support of their RICO claim. First, the plaintiffs allege that Gomez told Swanson in a telephone conversation that "we can give you a ticket wherever we want." *Amended Complaint*, ¶ 25. This telephone call allegedly took place as part of Swanson's efforts to contest his traffic citation. The plaintiffs allege that Gomez's statement constitutes wire fraud, a RICO predicate act. The plaintiffs allege also that the clerk of the Town's court sent letters to certain individuals who had been issued traffic citations outside of the Town's boundaries. *Id.*, ¶ 72 - 74. In these letters, the Town sought to collect the fines purportedly due on the citations issued by the Town's police department. The plaintiffs allege that these letters constitute mail fraud, which also is a RICO predicate act. In their response to the motion for summary judgment, the plaintiffs argue that the evidence shows predicate acts by the defendants because "each individual defendant has admitted to stopping many individuals over the preceding years, outside of their territorial jurisdiction with the expectation that revenue would be generated." *Response*, p. 20. The defendants "admit in the Motion for Summary Judgment that they have successfully and consistently prosecuted traffic citations [issued] outside of the jurisdiction for years, establishing a pattern of racketeering." *Id.* (emphasis in original).

Leaving aside the other flaws in the plaintiffs' RICO claims, I note that the plaintiffs' own description of the alleged pattern of racketeering activity on which their

RICO claim is based collides squarely with the **Rooker-Feldman** doctrine. The *sine qua non* of the claimed pattern of racketeering activity is the defendants' alleged successful and continuous prosecution of traffic citations issued outside of the Town's boundaries over the course of many years. The foundation of the plaintiffs' RICO claim amounts to a claim by "(parties) losing in state court . . . seeking what in substance would be appellate review of [a] state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." An award of damages or other relief to the plaintiffs based on their RICO claim would, in substance, undo the judgments entered against the plaintiffs in the Town's municipal court. In the context of the RICO claim asserted in the plaintiffs' Amended Complaint, such an award could only be based on "a losing party's claim that the state judgment itself violates the loser's federal rights." **Johnson v. De Grandy**, 512 U.S. 997, 1005-06 (1994). As discussed above, this is precisely the type of claim that is barred by the **Rooker-Feldman** doctrine.

## VIII. SUPERVISORY LIABILITY & MUNICIPAL LIABILITY

The plaintiffs bring a claim against Gomez, the Town's Chief of Police, and against the Town based on the allegation that Gomez and the Town failed adequately to train and supervise the Town's police officers concerning the Town's boundaries and the impropriety of issuing tickets outside of the Town's boundaries. In addition, the plaintiffs allege that Gomez and the Town permitted the maintenance of a custom, practice, and policy of issuing tickets outside of the Town's boundaries. The failure adequately to train and supervise the Town's police officers, and the maintenance of the custom, practice, and policy of issuing tickets outside of the Town's boundaries

caused, the plaintiffs allege, the constitutional violations suffered by the plaintiffs.

A supervisor is not liable under § 1983 unless an affirmative link exists between the alleged constitutional deprivation and either the supervisor's personal participation in the violation, his exercise of control or direction, or his failure to supervise. *Meade v. Grubbs*, 841 F.2d 1512, 1527 - 1528 (10th Cir. 1988). The supervisor must have participated or acquiesced in the alleged constitutional deprivations. *Id*. A supervisor may be held liable when there is essentially a complete failure to train, or training that is so reckless or grossly negligent that future misconduct is almost inevitable. *Id*. A supervisor also may be held liable when the supervisor establishes or maintains an unconstitutional policy or custom. *Id*. A plaintiff suing a municipality under § 1983 for the actions of one of its police officers must prove: 1) that a municipal employee committed a constitutional violation; and 2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004).

Gomez testified in his deposition that he believed the Town's police officers had the lawful authority to issue traffic citations on Sheridan Boulevard and 44th Avenue, outside of the Town's boundaries, and that those citations properly could be prosecuted in the Town's court. *Response*, Exhibit E (Gomez Depo.), p. 20. Gomez testified also that it was the custom, practice and policy of the Town to issue traffic citations in these areas outside of the Town's boundaries. *Id.*, p. 29. Viewing this evidence in the light most favorable to the plaintiffs, as I must, I conclude that the plaintiffs have come forward with sufficient evidence to permit a reasonable fact finder to conclude that Gomez and the Town acquiesced in the alleged constitutional

violations, that Gomez failed to train the Town's police officers sufficiently to prevent the type of constitutional violation alleged by the plaintiffs, and that Gomez and the Town maintained a custom, practice, or policy of issuing traffic citations in certain areas outside of the Town's boundaries . The plaintiffs have come forward with evidence sufficient to support their claim of supervisory liability against Gomez and municipal liability against the Town under § 1983.

## IX. QUALIFIED IMMUNITY

Defendants Gomez, Groff, Hernandez, and Perez argue that they are shielded from the plaintiffs' claims by qualified immunity. Qualified immunity shields public officials from civil damages liability if their actions did not "'violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pino v. Higgs*, 75 F.3d 1461, 1467 (10th Cir. 1996) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The qualified immunity defense "cannot be analogized to other affirmative defenses because of the interests implicated in suits against government officials. Unlike other affirmative defenses, qualified immunity not only shields a defendant from liability, but is also intended to protect the defendant from the burdens associated with trial." *Pueblo Neighborhood Health Centers, Inc. v. Losavio*, 847 F.2d 642, 645 (10th Cir.1988). The defense is only available to those defendants sued in their individual capacities. *See Moore v. City of Wynnewood*, 57 F.3d 924, 929 n. 4 (10th Cir.1995).

A motion for summary judgment asserting the defense of qualified immunity must be reviewed differently from other summary judgment motions. *Holland v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001), cert. denied, 535 U.S. 1056 (2002). After a

defendant asserts  qualified immunity, the burden shifts to the plaintiff.  **Scull v. New Mexico**, 236 F.3d 588, 595 (10th Cir.2000).  The plaintiff first must establish "that the defendant's actions violated a constitutional or statutory right."  **Albright v. Rodriguez**, 51 F.3d 1531, 1534 (10th Cir. 1995); **Wilson v. Layne**, 526 U.S. 603, 609 (1999) (noting the court must first decide whether the plaintiff has alleged deprivation of a constitutional right).  This burden means coming forward with specific facts establishing the violation. **Taylor v. Meacham**, 82 F.3d 1556, 1559 (10th Cir.1996).

If the plaintiff establishes a violation of a constitutional or statutory right, then he must demonstrate that the right at issue was clearly established *at the time* of the defendant's alleged unlawful conduct.  **Albright**, 51 F.3d at 1534.  To demonstrate clearly established law, the plaintiff must cite "a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts," which find the law to be as the plaintiff maintains.  **Medina v. City and County of Denver**, 960 F.2d 1493, 1498 (10th Cir.1992).  The plaintiff must demonstrate a substantial correspondence between the conduct in question and prior law establishing that the defendant's actions clearly were prohibited.  **Hilliard v. City and County of Denver**,  930 F.2d 1516, 1518 (10th Cir. 1991) (citing **Hannula v. City of Lakewood**, 907 F.2d 129, 131 (10th Cir. 1990).  In determining whether the right was "clearly established," the court assesses the objective legal reasonableness of the action at the time and asks whether "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right."  **Wilson v. Layne**, 526 U.S. at 615. However,  the plaintiff need not establish a "precise correlation between the then-existing law and the case at hand." **Patrick v. Miller**, 953 F.2d 1240, 1249 (10th

Cir.1992). "[W]hether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action ... assessed in light of the legal rules that were 'clearly established' at the time it was taken." ***Anderson v. Creighton***, 483 U.S. 635, 639 (1987) (quotations and citations omitted).

If the plaintiff satisfies both of these elements, the burden shifts to the defendant. Unless the defendant demonstrates that there is no disputed issue of material fact relevant to the immunity analysis, a motion for summary judgment based on qualified immunity must be denied. ***Salmon v. Schwarz***, 948 F.2d 1131, 1136 (10th Cir.1991). If the plaintiff fails to satisfy either part of the two-pronged inquiry, then the court must grant qualified immunity. ***Albright***, 51 F.3d at 1535. In short, although the court must review the evidence in the light most favorable to the plaintiff, the record must demonstrate clearly that the plaintiff has satisfied his heavy two-part burden. In civil rights cases, a defendant's unlawful conduct must be demonstrated with specificity. ***Davis v. Gracey***, 111 F.3d 1472, 1478 (10th Cir. 1997).

I limit my qualified immunity analysis to the plaintiffs' first and third claims for relief. I have concluded that the defendants are entitled to summary judgment on the Second Claim for Relief, the RICO claim, and I do not include this claim in my qualified immunity analysis. In their First Claim for Relief, the plaintiffs allege that Gomez, Groff, Hernandez, and Perez violated the plaintiffs' Fourth Amendment rights. In their Third Claim for Relief, the plaintiffs claim that Gomez, as Chief of Police, knew of and ratified the other defendants' unlawful issuance of traffic citations in violation of the plaintiffs' rights.

I conclude that the plaintiffs have come forward with evidence that would permit a reasonable fact finder to conclude that the defendants' actions violated the plaintiffs' Fourth Amendment Rights. Again, the plaintiffs' Fourth Amendment claim, as narrowed by the ***Rooker-Feldman*** doctrine, is based on their assertion that the defendant police officers stopped the plaintiffs for traffic offenses when the plaintiffs had not committed a traffic violation within the boundaries of the Town. There is ample evidence to support this contention. A traffic stop, even if brief, constitutes a seizure within the meaning of the Fourth Amendment. ***U.S. v. Zubia-Melendez***, 263 F.3d 1155, 1160 (10th Cir. 2001). "A warrantless arrest executed outside of the arresting officer's jurisdiction is analogous to a warrantless arrest without probable cause. Absent exigent circumstances, such an arrest is presumptively unreasonable." ***Ross v. Neff***, 905 F.2d 1349, 1354 (10th Cir. 1990) (citations omitted). While a traffic stop generally does not constitute an arrest, the analogy between a stop and an arrest is compelling in terms of a police officer's authority to act outside of that officer's jurisdiction. For the purpose of the qualified immunity analysis, the plaintiffs have established that the defendants' actions violated a constitutional right.

Again, if the plaintiffs establish a violation of a constitutional or statutory right, then the plaintiffs must demonstrate that the right at issue was clearly established at the time of the defendant's alleged unlawful conduct. ***Albright v. Rodriguez***, 51 F.3d at 1534. The cases cited in the preceding paragraph demonstrate that the right at issue was established clearly at the time of the traffic stops at issue here. Again, ***Ross*** concerns an arrest outside of an officer's jurisdiction, as opposed to a traffic stop, but the analogy between a traffic stop and an arrest is compelling in terms of a police

officer's authority to act outside of that officer's jurisdiction. When addressing a claim of qualified immunity, a plaintiff need not establish a "precise correlation between the then-existing law and the case at hand." *Patrick v. Miller*, 953 F.2d 1240, 1249 (10th Cir.1992). The key question is whether or not "the right [was] sufficiently clear that a reasonable officer would understand that what he is doing violates that right." *Wilson v. Layne*, 526 U.S. at 615. Based on *Ross*, I conclude that the right at issue here was sufficiently clear at the time of the traffic stops in question.

Defendants Groff, Hernandez, and Perez argue that they believed that they had the authority to issue the citations in question, even though they were issued outside of the Town's boundaries. *Reply*, p. 6. In light of the clearly established law outlined above, their belief that the traffic stops were lawful does not change the qualified immunity analysis.

The plaintiffs have satisfied the two part burden they must surmount to overcome the claim of qualified immunity asserted by defendants Gomez, Groff, Hernandez, and Perez. These defendants' motion for summary judgment based on qualified immunity is denied.

## XI. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the **Defendants' Combined Motion and Brief in Support of summary Judgment** [#63], filed October 1, 2007, is **GRANTED** as to all claims asserted by plaintiff Joanne Roe;

2. That the **Defendants' Combined Motion and Brief in Support of summary Judgment** [#63], filed October 1, 2007, is **GRANTED** as to the plaintiffs' claims under

42 U.S.C. § 1983 to the extent the plaintiffs seek to recover the traffic fines they paid to the Town or other damages incurred in the course of or as a result of proceedings in the Town's court;

3. That the **Defendants' Combined Motion and Brief in Support of summary Judgment** [#63], filed October 1, 2007, is **GRANTED** as to the plaintiffs' claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 - 1968;

4. That the **Defendants' Combined Motion and Brief in Support of summary Judgment** [#63], filed October 1, 2007, is **DENIED** otherwise;

5. That plaintiff, Joanne Roe, is **DROPPED** from this action, and the caption of this case shall be **AMENDED** accordingly; and

6. That the **Defendants' Motion To Dismiss First Amended Complaint** [#25], filed March 2, 2007, is **DENIED** as moot.

Dated March 20, 2008, at Denver, Colorado.

BY THE COURT:

s/ Robert E. Blackburn
Robert E. Blackburn
United States District Judge
